**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


**Theresa J. Meyer**

    **v.**                            Case No.  09-cv-106-PB
                                        Opinion No. 2010 DNH 199

**James M. Callahan, et al.**


**MEMORANDUM AND ORDER**

Defendant James Callahan, joined by defendant Steve Lawrence, moves to dismiss Theresa Meyer's amended complaint for failure to state a claim upon which relief can be granted. Callahan argues that Meyer failed to plead sufficient facts to support her contention that the defendants possessed the required scienter for common-law fraud, securities fraud, and civil conspiracy.  For the reasons discussed below, I grant Callahan's motion to dismiss, Doc. No. 104, and dismiss counts I (fraud), II (securities fraud), and IV (civil conspiracy), as well as the related counts III (concert of action) and V (exemplary damages) of the amended complaint, Doc. No. 107.[1]

_____

[1] Meyer's concert of action and exemplary damages claims rely on the underlying fraud-related claims that Callahan argues

## I. <u>BACKGROUND</u>

Meyer has sued over a dispute that arose from the creation of S3 Sentinel Safety Supply, Inc. ("S3"), an entity that was created from the combined assets of eight individual companies ("S3 entities").  One of those companies was Meyer's company RescueTees.com, LLC ("RescueTees"), an online firefighter's apparel and novelty company.  Callahan and Lawrence were both heavily involved in the creation of S3 and were Meyer's primary contacts while the business transaction was ongoing.

Meyer was contacted in the spring of 2006 by Callahan and Lawrence concerning the proposed purchase of RescueTees' assets. It was eventually determined that the asset purchases from all the S3 entities would be financed with a loan from Wachovia Financial Services.  Wachovia advanced $9,750,000 to purchase the S3 entities' assets, pay any assumed liabilities, and capitalize S3.  Meyer was to receive a total of $3,877,500 for the sale of RescueTees' assets, with $987,825 to be paid in cash, $420,885 in

---

should be dismissed for failure to adequately plead scienter. Because I have determined that scienter was in fact inadequately pleaded, those additional claims must fail as well.  As such the only remaining claim is count VI, for legal malpractice, which was not challenged by the defendants.

a promissory note from S3 subordinated to Wachovia's interest in the company, and $2,468,790 in S3 stock.

According to the complaint, Callahan and other individuals who were involved in the transaction represented to Meyer on multiple occasions that the other companies whose assets were being acquired by S3 were "financially sound." Am. Compl. at ¶ 26(c). These communications also included representations that "S3 would be financially sound following acquisition of the assets of the S3 entities," that the "capital and cash reserves of S3 would be sufficient to properly operate S3 following acquisition of the assets of the S3 entities," and that "there had been no material change with respect to the financial status of the S3 entities." Am. Compl. at ¶ 26(d-f).

The "material change" alluded to in the complaint appears to refer to changes in the financial statements that were provided to Meyer prior to the closing. However, the complaint does not date or describe the content of those financial statements, alleging only that they were represented to Meyer to be "accurate" and that she was told that the assets and liabilities at the time of closing would be the same as indicated by the prior statements. Am. Compl. at ¶ 26(f).

Immediately following the closing of the S3 transaction in September of 2007, S3 had a "capital and cash shortage," which prevented it from operating.  Am. Compl. at ¶ 32.  Meyer alleges that prior to the closing, the defendants "knew, or should have known, that there had been material changes in the financial conditions of the S3 entities and that their actual assets and liabilities were not as previously represented."  Am. Compl. at ¶ 28.  Thus, the defendants "knew prior to the S3 closing that S3 would be insolvent upon closing and failed to disclose that information to Meyer prior to closing."  Am. Compl. at ¶ 33.

As a result of this failure to disclose the material changes in the financial status of the other companies, Meyer alleges that she suffered economic damages in the form of loss of the promised S3 stock value, as well as the debt secured by the promissory note.

## II.  <u>PROCEDURAL HISTORY</u>

This motion to dismiss comes before me at a somewhat unusual procedural point in the case.  The original complaint was filed in September of 2008 in Michigan state court.  It was later removed to federal court in Michigan at the request of the

-4-

defendants, and in March of 2009 the case was transferred to the
District of New Hampshire.  The parties entered into formal
discovery, which continued until September 2010 when Meyer filed
a motion seeking permission to file an amended complaint.  I
granted that motion while explicitly allowing the defendants to
file a motion to dismiss the amended complaint before trial.[2]
Callahan, joined by Lawrence, filed this motion to dismiss in
accordance with that order.

## III. <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a claim,
the general rule under Rule 8 of the Federal Rules of Civil
Procedure is that the complaint must "state a claim to relief
that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct.
1937, 1949 (2009) (internal quotation marks omitted).  "The
plausibility standard," while not a "probability requirement,"
requires more than a "sheer possibility that a defendant has
acted unlawfully."  <u>Id.</u> (internal quotation marks omitted).
"Threadbare recitals of the elements of a cause of action,

---

[2] In light of that order, Meyer's arguments that the motion
to dismiss is untimely or otherwise procedurally barred are
without merit.

supported by mere conclusory statements, do not suffice."  <u>Id.</u>

## IV. <u>ANALYSIS</u>

Callahan argues that he is entitled to dismissal of the fraud, securities fraud, and civil conspiracy counts because each of those fraud-related claims are held to an even higher pleading threshold than the plausibility standard of Rule 8.  Callahan relies on Federal Rule of Civil Procedure 9(b) for this claim, arguing that Meyer has failed to adequately plead the scienter requirement of the fraud-related claims.  I will address in turn A) the appropriate pleading standard for scienter in Meyer's fraud-related claims, and B) whether those claims have been adequately pleaded under that standard.

### A.   <u>The Appropriate Pleadings Standard</u>

As a threshold matter, I must determine the level of particularity Meyer's pleadings must rise to in order to survive the motion to dismiss.  As Callahan correctly points out, the federal rules require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. Pro. 9(b).  Rule 9(b) also extends to Meyer's claims for securities fraud and

civil conspiracy in this case, as it applies not just to fraud but also to "associated claims where the core allegations effectively charge fraud."  N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009); see also Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (holding that a civil conspiracy claim was subject to Rule 9(b) requirements).

Callahan is incorrect, however, to the extent that he contends that Rule 9(b) requires Meyer to plead scienter with particularity.  The second sentence of the rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. Pro. 9(b).  The recent Supreme Court decision of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), clearly laid out how that sentence affects the pleading requirements for scienter in fraud-related claims, stating:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to

-7-

evade the less rigid-though still operative-strictures
of Rule 8.

Iqbal, 129 S. Ct. at 1954.  Thus where, as here, the defendant
challenges only the sufficiency of a plaintiff's pleading as it
relates to scienter, the pleadings are appropriately analyzed
under the framework of Rule 8 rather than Rule 9(b).

**B.    Application of Rule 8**

The Supreme Court's decision in Bell Atlantic Corp. v.
Twombly, 550 U.S. 544 (2007), and its more recent decision in
Iqbal establish the appropriate structure for analyzing the
sufficiency of pleadings under Rule 8.  Those cases dictate a
"two-pronged approach" that requires courts to first identify
"pleadings that, because they are no more than conclusions, are
not entitled to the assumption of truth."  Iqbal, 129 S. Ct. at
1950.  The second step then requires courts to look at the
remaining well-pleaded factual allegations, assume their
veracity, and "determine whether they plausibly give rise to an
entitlement to relief."  Id.

**1.  Meyer's conclusory pleadings**

Turning to the first prong of the analysis, a number of the
allegations in Meyer's complaint fail to rise above the threshold

-8-

of mere conclusions.  Alleged facts are not entitled to be assumed true when they merely restate the legal elements of a claim rather than provide specific facts to support those elements.  See Iqbal, 129 S. Ct. at 1951; Twombly, 550 U.S. at 555.  Of particular relevance here, in Iqbal the plaintiff's allegations of unconstitutional discrimination were deemed insufficient where he pleaded that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions.  Iqbal, 129 S. Ct. at 1951.  The Court noted that these allegations of scienter were "nothing more than a 'formulaic recitation of the elements'" and as such were not entitled to be assumed true.  Id. (quoting Twombly, 550 U.S. at 555).

Here, as in Iqbal, many of Meyer's allegations of scienter are merely legal conclusions that restate the elements of the claims rather than providing factual support for the conclusions expressed.  The complaint alleges, for example, that "Callahan and Lawrence knew, or should have known, that there had been material changes in the financial conditions of the S3 Entities and that their actual assets and liabilities were not as previously represented."  Am. Compl. at ¶ 28.  Later, the

-9-

complaint alleges that "Callahan and Lawrence knew prior to the S3 Closing that S3 would be insolvent upon closing and failed to disclose that information to Meyer prior to closing." Id. at ¶ 33. Similarly bare allegations of the defendants' scienter are made in paragraph 41 ("S3 Defendants both knew the representations were false when made, or made the representations recklessly . . ."), paragraph 47 ("S3 Defendants knew of the material changes in the financial conditions . . .") and paragraph 55 ("S3 Defendants . . . conspired with one another with the intent to . . . defraud[] Meyer of her interest . . ."). None of these paragraphs provide any factual basis for inferring the knowledge they allege the defendants possessed, and so they are not entitled to a presumption of truth.

Meyer responds to the motion to dismiss by simply citing to a list of paragraphs she claims indicate that "Lawrence and Callahan made untrue statements about the financial stability of the companies involved which they knew or had reason to know were false." Pl.'s Obj. to Def. James M. Callahan's Partially Assented-to Mot. to Dismiss, Doc. No. 122, at 11 (citing to ¶¶ 17, 18, 19, 26, 28-30, 33, 35, 46-49). Of the allegations Meyer cites, paragraphs 28, 33, and 47 are bare legal conclusions

-10-

couched as factual allegations, as discussed above.  As such, those paragraphs are not entitled to a presumption of truth and I need not consider them in evaluating the motion to dismiss.

**2.  <u>Remaining factual allegations of scienter</u>**

In considering the remainder of Meyer's complaint, I must determine whether the allegations "plausibly suggest an entitlement to relief." <u>Iqbal</u>, 12 S. Ct. at 1951.  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949.  In other words, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitle[ment] to relief." <u>Twombly</u>, 550 U.S. at 557 (internal quotation marks omitted).  First Circuit cases have established that a mere "general averment" of scienter is not enough, and that in the context of financial fraud the plaintiff must offer some factual basis for inferring that the defendants knew or should have known their financial characterizations were inaccurate when they were made.  <u>See</u> <u>Cardinale</u>, 567 F.3d at 13; <u>Serabian v. Amoskeag Bank Shares, Inc.</u>, 24 F.3d 357, 362-66 (1st Cir. 1994).

-11-

In Cardinale the plaintiff's claim for fraudulent inducement
was found to be inadequately pleaded because, while the complaint
alleged that the defendant "never intended to follow its business
plan," that assertion was "not itself supported with particulars
that suggest scienter" and thus the complaint failed to meet the
pleading requirements of Rule 9(b).[3]  567 F.3d at 13.  Similarly,
Serabian found a securities-fraud claim to be insufficiently
pleaded because the plaintiffs offered "no basis for inferring
that the defendants knew that the bank's loan portfolio was, at
that time, improperly characterized as 'excellent.'"  Serabian,
24 F. 3d at 362.  Specifically, the court noted that the
plaintiffs offered "no information about the general health of
the company's loan portfolio, and fail[ed] to cite any specific
loans that were in trouble."  Id.

In contrast, Serabian upheld a separate securities fraud
claim based on a different set of facts because there the
plaintiffs alleged specifically that the defendants were informed

---

[3] Although both Cardinale and Serabian predate Iqbal and
thus discuss the pleading requirements of scienter for fraud and
related claims under Rule 9(b) rather than under Rule 8 as Iqbal
indicates is appropriate, the reasoning of these cases is
nevertheless persuasive and thus warrants discussion in this
context.

by a loan review officer that the "quality of commercial loans had deteriorated," yet the defendants continued to make public statements characterizing the company's position as "strong." Id. at 363-64.  Scienter was adequately pleaded because the plaintiffs were able to "juxtapose these allegations showing internal awareness" with "the company's public statements."  Id. at 364.  In particular, the court noted that "plaintiffs specifically identif[ied] the internal reports and public statements underlying their claims, providing names and dates," rather than "simply rely[ing] on poor performance in the aftermath of positive reports."  Id. at 365.

Meyer's allegations of scienter in this case are more similar to the claims that were inadequate in Cardinale and Serabian than to the allegations that were sufficient.  While Meyer does allege the second part of the juxtaposition that was key to the adequacy of the pleading in Serabian - statements by the defendants regarding the strong financial health of the investment – allegations showing internal awareness of the falsity of those statements are lacking.  Meyer does not refer to any specific internal reports of S3 beyond the one nebulous allusion to "financial statements" she received, and even that

allegation does not provide information as to what data the financial statements contained or when she received them.  Am. Compl. at ¶ 26(f).  Like the pleadings that were insufficient in Cardinale and Serabian, Meyer offers no concrete information showing what the defendants knew about financial problems of the S3 entities that could be juxtaposed with their statements that the entities were financially sound.

The only fact Meyer alleges which could indicate that defendants were aware of problems with the S3 entities is that when she requested information regarding the financial status of the other S3 entities, she was rebuffed and told such information was "confidential."  Am. Compl. at ¶ 17.  However, such information, standing alone, does not rise to the level of plausibility required by Iqbal.  While it is consistent with the theory that the defendants were attempting to hide financial information from Meyer so that she would not discover the real (and much worse) financial status of the other S3 entities, mere consistency is not enough.  Twombly, 550 U.S. at 557.  The information could, for example, have actually been confidential, given that Meyer was seeking internal financial information of other companies before the closing had made the asset-purchases

-14-

official.  Without any corroborating allegations, the vague
inference this allegation would require is far too inconclusive
to save Meyer's claims by itself.

Meyer's allegation that information was withheld from her as
confidential is particularly inadequate given this cases's
procedural history.  Discovery has already taken place and thus
Meyer has had a full opportunity to supplement her complaint with
specific facts through the discovery process.  Cf. Michaels Bldg.
Co. v. Ameritrust, 848 F.2d 674, 680 (6th Cir. 1988) (noting that
Rule 9(b) may be "relaxed" where there has not yet been any
discovery and the plaintiff seeks information that is only within
the opposing party's knowledge).  Despite the benefits of
discovery and the unusual opportunity to file an amended
complaint just a few weeks before trial, Meyer provides no
information as to what supposedly confidential information was
withheld from her, or what the defendants knew at the time they
denied her access to the information.  The allegation that
financial information was withheld from Meyer does not plausibly
plead the scienter element of fraud.

The remainder of the paragraphs cited by Meyer as supporting
her scienter allegations are similarly unavailing.  Several of

-15-

the paragraphs only provide factual support for the second part
of the juxtaposition discussed in <u>Serabian</u> - that the defendants
made statements to her regarding the present or future financial
health of the S3 entities – and thus do not provide any
inferences as to what they knew or should have known at that
time.  Am. Compl. at ¶¶ 18, 19, 26.  Paragraphs 29 and 30 allege
only that the defendants did not disclose adverse financial
information to Meyer, which presumes scienter without actually
showing it.  Am. Compl. at ¶¶ 29-30.  Finally, three of the four
remaining paragraphs simply allege the defendants' liability
generally and are thus irrelevant to proving scienter.  Am.
Compl. at ¶¶ 46, 48-49.  This leaves only one remaining paragraph
that Meyer points to, which states that "[f]ollowing closing and
distribution of the Wachovia Loan proceeds, S3 was insolvent and
Meyer's Subordinated Debt and stock interest in S3 were
worthless."  Am. Compl. at ¶ 35.

　　　Because the allegation that the defendants withheld
information as "confidential" is insufficient by itself, Meyer's
scienter allegations only survive if I draw the inference
suggested by this last remaining paragraph -- that, because the
financial status of the S3 entities at the time of closing was

-16-

not as good as advertised earlier in the transaction, the
defendants must have known about the discrepancy and fraud must
have occurred.  This "fraud by hindsight" is exactly the kind of
reliance on "poor performance in the aftermath of positive
reports" that was found to be inadequate in Serabian, as it has
been in numerous other decisions.  Serabian, 24 F.3d at 365; see
also, e.g., Shaw v. Digital Equip. Corp., 82 F.3d 1194, (1st Cir.
1996) (citing cases that reject "fraud by hindsight" and noting
that "a plaintiff may not simply contrast a defendant's past
optimism with less favorable actual results, and then contend[]
that the difference must be attributable to fraud") (internal
quotation marks omitted).  Because fraud by hindsight has been
rejected by this circuit, the fact that some financial
information was denied to Meyer as purportedly confidential
remains the sole allegation from which to infer that the
defendants possessed the requisite scienter for fraud.  This is
not enough to survive a motion to dismiss.

Overall, the allegations in Meyer's complaint regarding
fraudulent intent are insufficient to meet the pleading standards
of Rule 8.  Many of Meyer's pleadings are bare legal conclusions
that are not entitled to a presumption of validity, and the

-17-

remaining allegations simply do not provide enough information, even when presumed true, to allow an inference that the defendants knew or should have known that there was a material change in the financial status of the S3 entities that Meyer had a right to be told about.  Meyer's fraud-related claims must be dismissed.

## V.  CONCLUSION

For the reasons stated above, I conclude that Meyer has inadequately pleaded the scienter element of her claims for fraud (Count I), state securities fraud (Count II), and civil conspiracy (Count IV), and I grant defendant's motion to dismiss (Doc. No. 104) as to those claims.  Meyer's claims for concert of action (Count III) and exemplary damages (count V) are also dismissed as they rely on those underlying fraud claims.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 23, 2010

cc:  Daniel J. Mullen, Esq.

Stephen D. Coppolo, Esq.
William C. Saturley, Esq.
Mark E. Howard, Esq.
Paul A. McCarthy, Esq.