**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Theresa J. Meyer</u>

     **v.**                           Case No.  09-cv-106-PB
                                           Opinion No. 2010 DNH 202

<u>James M. Callahan, et al.</u>


<u>MEMORANDUM AND ORDER</u>

     The parties disagree as to whether the law of Michigan or New Hampshire governs Theresa Meyer's legal malpractice claim. For the reasons set forth below, I conclude that New Hampshire law applies to the present conflict.


**I.  <u>BACKGROUND</u>**

     The events that give rise to this dispute began in the spring of 2006 when defendant James Callahan and former defendant Steve Lawrence[1] contacted plaintiff Theresa Meyer and asked if she would be willing to sell the assets of her business, "RescueTees.com," to a newly formed corporation to be known as

---

     [1] Lawrence was named as a defendant with respect to claims that have since been dismissed.

"Emergency Resources, Inc." ("ERI").  At that point, Meyer and her business were based in Michigan.  Financing for the transaction was to be arranged by The Havens Group, a management consulting firm.  Richard Kopp, the president of The Havens Group, was to participate in the new business as a member of ERI's management team.  Callahan, who was then practicing in New Hampshire, was to serve as counsel to Meyer and other the businesses that would also be selling their assets to ERI.

Callahan and Meyer signed an engagement letter on June 16, 2006, in which Callahan agreed to represent Meyer in connection with the sale of the RescueTees.com's assets to "The Havens Group or its nominee."  The engagement letter also stated "that this engagement will be construed under the law of the State of New Hampshire."

Kopp and The Havens Group withdrew from the proposed transaction several months later and the name for the new business was changed from ERI to "S3 Sentinel Safety Supply" ("S3").[2]  Meyer signed a letter of intent signifying her

---

[2] At some point during this period, Callahan concluded that he no longer represented the asset sellers, but instead owed his allegiance to S3.  No formal notice was sent to Meyer or the other business owners.  Meyer maintains that "at all times I understood Callahan to be representing my interests in the S3 transaction, as provided in the original Engagement Letter."

intention to complete the asset sale to S3 while she was still a
Michigan resident.  In June 2007, however, she moved (with her
business) to New Hampshire because it was anticipated that S3
would be based in New Hampshire and Meyer was planning to work
for the new company as part of its management team.

The closing of the S3 transaction occurred on September 11,
2007.  The Asset Purchase Agreement specified that "[t]his
Agreement shall be governed by and construed in accordance with
the laws of the State of New Hampshire."

Shortly after the Asset Purchase Agreement was executed, S3
was deemed to be insolvent.

## II.  **ANALYSIS**

The parties disagree as to which state's law governs Meyer's
legal malpractice claim.  Meyer argues that Michigan law controls
because she was a Michigan resident when Callahan began
representing her.  The defendants argue that New Hampshire law
applies because of the choice-of-law provision contained in the
Asset Purchase Agreement as well as New Hampshire's general
choice-influencing factors.  Although I agree with the

───────────────

Meyer Aff. ¶ 23.

defendants, I reach this conclusion primarily because of the
choice-of-law provision contained in the engagement letter
between Meyer and Callahan.[3]

---

[3]   The parties assume that the issue is governed by New
Hampshire's choice-of-law rules.  Choice-of-law problems that are
before the court on the basis of the court's diversity of
citizenship jurisdiction are ordinarily resolved using the forum
state's choice of law rules.  See Klaxon Co. v. Stentor Elec.
Mfg. Co., 313 U.S. 487, 496 (1941).  While I ultimately agree
that New Hampshire's choice-of-law rules apply, the issue
requires analysis.  District Judge Jonker of the District of
Michigan transferred this case to the District of New Hampshire
"under 28 U.S.C. § 1404 (a), or alternatively under 28 U.S.C. §§
1406(a), 1631."  Under the Supreme Court's ruling in Van Dusen v.
Barrack, when a case is transferred from one federal district to
another under § 1404(a), the transferee court must ordinarily
"apply the state law that would have been applied if there had
been no change of venue."  Van Dusen v. Barrack, 376 U.S. 612,
639 (1964).  This includes application of the transferor's
choice-of-law rules.  See id.; Templeman v. Baudhuin Yacht
Harbor, Inc., 608 F.2d 916, 917 (1st Cir. 1979).  However, the
rule of Van Dusen is not applicable to every transfer between
district courts.  See Van Dusen, 376 U.S. at 639-40; Roofing &
Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d
982, 991-93 (11th Cir. 1982).  While the First Circuit has not
addressed this issue, many circuits hold that -- unlike a
transfer pursuant to § 1404 (a) -- a transfer under § 1406 (a)
mandates the application of the transferee's choice-of-law rules.
See, e.g., Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d
1523, 1532 (10th Cir. 1996); Manley v. Engram, 755 F.2d 1463,
1470 (11th Cir. 1985); Nelson v. Int'l Paint Co., 716 F.2d 640,
643 (9th Cir. 1983); Ellis v. Great Sw. Corp., 646 F.2d 1099,
1103-11 (5th Cir. 1981); Renyo v. Piper Aircraft Co., 630 F.2d
149, 165 (3d Cir. 1980), rev'd on other grounds, 454 U.S. 235
(1981); Martin v. Stokes, 623 F.2d 469, 472-73 (6th Cir. 1980).
By making his transfer to New Hampshire pursuant to §§ 1406 (a)
and 1631, District Judge Jonker determined that the District
Court of Michigan was an improper venue for the suit.  See 28
U.S.C. § 1406 (a).  Therefore, the plaintiff should not be

**A.    Contractual Choice-of-Law Analysis**

It is well established under New Hampshire law that "[w]here parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction."  Hobin v. Coldwell Banker Residential Affiliates, Inc., 744 A.2d 1134, 1137 (N.H. 2000).  In this case, the engagement letter specified that "this engagement will be construed under the law of the State of New Hampshire."  The letter clearly bears a significant relationship to the state of New Hampshire.  At the time of the contract, Callahan was practicing in New Hampshire as a member of Brighton, Runyon and Callahan.  Additionally, Callahan's services were performed primarily in New Hampshire as part of a transaction that culminated in the creation of a New Hampshire business entity.

Although Meyer's legal malpractice claim is grounded in tort, the engagement letter's choice-of-law provision is broad

---

afforded the application of an improper venue's choice-of-law rules.  In any event, since both parties briefed this court on New Hampshire choice-of-law rules, they have waived their right to later argue that another state's choice-of-law rules should apply.

enough to govern her claim.  The letter's language is not limited to the construction of the agreement, but instead covers Meyer's entire "engagement" with Callahan.  As a result, the contractual choice-of-law provision is broad enough to encompass Meyer's malpractice claim despite its basis in tort.  See Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609-10 (1st Cir. 1993) (applying broad choice-of-law provision to unfair trade practices claim);  Hobin, 744 A.2d at 1137-41 (applying broad choice-of-law provision to attendant misrepresentation and good-faith and fair dealing claims).

### III.   **CONCLUSION**

Meyer's remaining claim centers around her relationship with Callahan, a practicing member of the New Hampshire bar, who advised Meyer about a deal that would culminate in New Hampshire with the creation of S3.  The engagement letter between Meyer and Callahan clearly noted that their relationship would be governed by New Hampshire law.  Given the engagement letter's clear choice of New Hampshire law, the nature of Meyer's remaining claim, and New Hampshire's ultimate connection to the transaction, I

conclude that Meyer's remaining malpractice claim is properly governed by New Hampshire law.  Defendants' motion for ruling on choice of law (Doc. No. 81) is granted.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 29, 2010

cc:  Daniel J. Mullen, Esq.
     Stephen D. Coppolo, Esq.
     William C. Saturley, Esq.
     Mark E. Howard, Esq.
     Paul A. McCarthy, Esq.